UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

WARREN L. OLIVER,

     Plaintiff,

v.                                  CASE NO. 6:17-cv-1792-Orl-31TBS

DR. CALDERON, et al.,

     Defendants.

_____/

## ORDER

This cause is before the Court on Defendants' Motions for Summary Judgment. (Doc. Nos. 138 and 139). Plaintiff has filed a Response in Opposition to the Motions. (Doc. 163).

## I.    BACKGROUND

Plaintiff Warren L. Oliver ("Oliver"), a *pro se* prisoner in Florida, filed this civil rights action against Defendants for claims arising out of his medical care while incarcerated at Tomoka Correctional Institution ("Tomoka"). (Doc. 11 at 5-19).

In 2012, Oliver was diagnosed with Helicobater pylori ("H.pylori") and was treated using a multi-drug regimen that included antibiotics. (Doc. Nos. 11 at 8; 172-1 at 3-4; 172-3 at 13-18). He continued to suffer from abdominal pain after that treatment. (Doc. Nos. 172-1 at 4; 172-3 at 18-75). In 2013, a gastroenterologist

performed a colonoscopy and an upper endoscopy on Oliver. The gastroenterologist concluded that Oliver's abdominal tract no longer contained any H.pylori and prescribed acid-blocker medication. (Doc. Nos. 172-1 at 5; 172-3 at 76.) Oliver was also placed on a low residue diet at some correctional facilities, but medical providers at other facilities found it was not medically necessary. (Doc. Nos. 172-1 at 5; 172-3 at 13-114).

In 2015, Oliver was again tested for H.pylori. The test detected the bacteria, but at a lower level than in 2012. (Doc. Nos. 172-1 at 5; 172-3 at 115-28). He received another multi-drug regimen to treat H.pylori. (*Id*.). Oliver was transferred to Tomoka in the fall of 2015. While there, a routine blood test revealed that Oliver was still positive for H.pylori. (Doc. 172-3 at 129-31).

On August 18, 2016, Oliver complained of abdominal pain and blood in his stool. Those complaints led his doctor, Dr. Calderon ("Calderon"), to order additional laboratory tests. (Doc. Nos. 172-1 at 7; 172-3 at 153). The results were normal, and Calderon treated Oliver's condition with acid-blocking medications. (Doc. Nos. 172-1 at 7; 172-3 at 153-60). Throughout the fall of 2016, Oliver was treated by Calderon, who made minor adjustments to his treatment plan. At this time, Oliver's blood counts and chemistry remained normal. (Doc. Nos. 172-1 at 7; 172-3 at 163-69).

2

In 2017, Oliver again complained of the same pain in his abdomen. (Doc. 172-3 at 171-72). Calderon ordered laboratory tests on February 23, 2017, and the results were normal. (Doc. Nos. 172-1 at 7-8; 172-3 at 172-3 at 172-76). Oliver's course of treatment remained largely the same, although Calderon prescribed simethicone to treat Oliver's gas symptoms. (Doc. Nos. 172-1 at 8; 172-3 at 176). On March 31, 2017, Nurse Taylor[1] treated Oliver and noted that he had "functional" abdominal pain syndrome. (Doc. 172-3 at 178). Taylor counseled him on his prescription medication options. (*Id*.)

In December 2017, Taylor determined that Oliver's abdominal pain was resistant to treatment and suggested referral to a specialist. (Doc. Nos. 172-1 at 9; 172-3 at 220-21). Calderon approved the referral and Oliver was treated by Dr. Radi on March 6, 2018, who recommended an Esophagogastroduodenoscopy ("EGD") and colonoscopy. (Doc. 172-3 at 223). These tests were performed on July 3, 2018, and the results were within a normal range. (Doc. 172-3 at 231-34). Radi did not recommend any changes to Oliver's medication and requested a follow-up in four weeks. (*Id*.). On July 31, 2018, Calderon denied the follow-up appointment request and determined that Oliver could be treated "locally." (Doc. Nos. 172-1 at 9; 172-3 at 240).

---

[1] Taylor has not been served.

3

On August 27, 2018, another doctor performed a comprehensive evaluation of Oliver and ordered additional testing. (Doc. Nos. 172-1 at 10; 172-3 at 242-43). The tests returned a "weak positive" for H.pylori and Oliver's medications were adjusted. (*Id.*). Additional testing from October through December 2018 returned the same results. (Doc. Nos. 172-1 at 10; 172-3 at 253-70). After a specialist treated Oliver on March 11, 2019, further tests were negative for H.pylori. (Doc. Nos. 172-1 at 10; 172-3 at 276-83). Oliver underwent another EGD in June 2019, and the results were normal. (Doc. Nos. 172-1 at 10; 172-3 at 293-99). He continues to be treated for his gastrointestinal issues. (Doc. 172-3 at 300-23).

Oliver now sues three categories of officials. First, he contends that Calderon violated his Eighth Amendment right to medical care and his First Amendment rights. (Doc. 11 at 8). Next, Oliver sues Todd and K. Johnson—two nurses—for violation of his Eighth Amendment rights. (*Id.* at 11-15). Third, Oliver sues three correctional officers, Defendants S. Johnson, Hartley, and Stroh, for violating Oliver's First and Eighth Amendment rights. (*Id.* at 16-18).

## II. STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In ruling on a motion for summary judgment, the Court construes the facts and all reasonable inferences therefrom in

the light most favorable to the nonmoving party. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). When faced with a "properly supported motion for summary judgment," the nonmoving party "must come forward with specific factual evidence, presenting more than mere allegations." *Gargiulo v. G.M. Sales, Inc.*, 131 F.3d 995, 999 (11th Cir. 1997).

## III.   DISCUSSION

### A.   The Treating Defendants (Calderon, Todd, and K. Johnson)

#### 1.   *Eighth Amendment Deliberate Indifference to Medical Care*

Calderon, Todd, and K. Johnson (together, the "Treating Defendants") argue that they are entitled to summary judgment on Oliver's Eighth Amendment claim because Oliver has not established that he was denied medical care or that they were deliberately indifferent to his medical needs. (Doc. 138 at 10-11).

To establish liability under § 1983 for inadequate medical treatment, a plaintiff must show that the failure to provide him medical care amounted to cruel and unusual punishment under the Eighth Amendment of the United States Constitution. "First, a plaintiff must set forth evidence of an objectively serious medical need. Second, a plaintiff must prove that the prison official acted with an attitude of 'deliberate indifference' to that serious medical need." *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976) (citations omitted). A serious medical need is "one that is diagnosed by a physician as requiring treatment or one that is so obvious that a

5

lay person would recognize the need for medical treatment." *Burnette v. Taylor*, 533 F.3d 1325, 1330 (11th Cir. 2008) (citing *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003)).

To establish the requisite deliberate indifference, a prisoner must prove that a defendant had "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than [gross] negligence." *Burnette*, 533 F.3d at 1330 (quotation omitted); *see also Farmer v. Brennan*, 511 U.S. 825, 834-835 (1994). Deliberate indifference can also include a delay in treatment when "'it is apparent that delay would detrimentally exacerbate the medical problem, the delay does seriously exacerbate the medical problems, and the delay is medically unjustified.'" *Harper v. Lawrence County, Ala.*, 592 F.3d 1227, 1235 (11th Cir. 2010) (quoting *Taylor v. Adams*, 221 F.3d 1254, 1259-60 (11th Cir. 2000)).

The Court previously concluded that Oliver had sufficiently alleged a serious medical need. (Doc. 65 at 8-9). And there is no dispute that the actions of the Treating Defendants did not amount to deliberate indifference to Oliver's serious medical needs. Oliver's medical records reflect that he has received continuous treatment for his abdominal pain since 2012, including while at Tomoka from 2015 through 2019. The Treating Defendants have submitted an expert medical report from Dr. Thomas D. Fowlkes, M.D. ("Dr. Fowlkes"). (Doc. 172-1). Dr. Fowlkes reviewed Oliver's medical records and opined that the medical

6

care he received at Tomoka—treatment and re-treatment with a multi-drug regimen for H.pylori—was "reasonable, appropriate, and within the acceptable standard of care." (Doc. 172-1 at 11, ¶ 1). He also opines that there is "no medical indication for Mr. Oliver to have a special accommodation of a low residue diet" because such a diet is not typically prescribed for treatment of H.pylori. (*Id.* at 13, ¶ 7). Finally, Dr. Fowlkes opines that to a reasonable degree of medical certainty, none of the medical treatment at Tomoka was below the standard of care and the care did not worsen Oliver's condition. (*Id.* at 14, ¶ 14).

Dr. Fowlkes also sees no indication that Todd and K. Johnson ignored sick call requests or that they failed to refer Oliver for medical care. (*Id.* at 12-13, 14, at ¶¶ 5-6 and 12-13). Relatedly, K. Johnson filed an affidavit with the Court in which she attests that she and other medical providers treated Oliver on numerous occasions. (Doc. 138-2 at 3, ¶ 4). She also notes that she was without authority to prescribe medication or courses of treatment, refer inmates for a doctor visit, or prevent patients from seeing Calderon. (*Id.* at ¶¶ 5-6, 8-9). She also affirms that she never refused "to let Mr. Oliver see Dr. Calderon for any scheduled visit." (*Id.* at ¶ 7). She never refused to treat Oliver. (*Id.* ¶ 9).

Dr. Fowlkes's report and K. Johnson's affidavit show that the Treating Defendants properly treated Oliver's medical conditions and did not act with deliberate indifference. Oliver has presented no evidence that these Defendants

failed to treat Oliver or refused to grant him medical appointments. Although Oliver suffered from—and may continue to suffer from—a serious medical condition, there is no evidence that any additional testing or treatment is necessary to treat his symptoms.

Oliver has not provided the Court with any evidence that refutes his medical records or Dr. Fowlkes's and K. Johnson's affidavits. Although he submitted affidavits from himself and three other inmates (Doc. 163 at 20, 26-27, and 29-31), the treatment provided to other inmates is not relevant to the adequacy of Oliver's treatment, and Oliver's affidavit does not refute the medical records produced by the Treating Defendants. *See Whitehead v. Burnside*, 403 F. App'x 401, 404 (11th Cir. 2010) (affirming grant of summary judgment in favor of defendant where plaintiff failed to produce evidence that refuted medical records); *Redd v. Conway*, 160 F. App'x 858, 861 (11th Cir. 2005) (holding that facts contained in medical records were undisputed because the plaintiff did not provide evidence to counter the written documentation of events).[2] And even if the other inmates'

---

[2] Oliver's arguments about the appropriateness of the treatment he received do not change this conclusion. Disagreement about the mode or amount of treatment cannot establish deliberate indifference when an inmate receives adequate medical care. *Harris v. Thigpen*, 941 F.2d 1495, 1507 (11th Cir. 1991). Here, Oliver has not demonstrated that the Treating Defendants refused to grant him access to medical testing, a low residue diet, medication, or failed to medically treat him in such a way that their actions rose to more than gross negligence.

affidavits were relevant, they are conclusory and do not create a material issue of disputed fact. *See Hines v. Parker*, 725 F. App'x 801, 806 (11th Cir. 2018) (finding that the affidavits submitted by the plaintiff and two inmates who averred that they were denied proper medical treatment were conclusory and failed to create a genuine issue of material fact pursuant to Rule 56(a) of the Federal Rules of Civil Procedure). Oliver has not shown that the Treating Defendants violated his Eighth Amendment rights and the Treating Defendants are therefore entitled to summary judgment on Oliver's claims.

### 2.    *First Amendment Retaliation Claims*

Calderon and Todd also ask for summary judgment on Oliver's claims that they violated his First Amendment rights by refusing to give him medical appointments or care as retaliation after he filed a grievance about his medical care at Tomoka. (Doc. 138 at 17).[3]

---

[3] Todd also argues that Oliver failed to exhaust his administrative remedies with regard to this claim, but that argument is without merit. (Doc. 138 at 17). To determine whether plaintiffs have exhausted their administrative remedies, courts review "whether remedies were *available* and exhausted." *Miller v. Tanner*, 196 F.3d 1190, 1193 (11th Cir. 1999) (citing *Alexander v. Hawk*, 159 F.3d 1321, 1326 (11th Cir. 1998)) (emphasis added). The Florida Department of Corrections has a three-step inmate grievance procedure. An inmate must file either an informal or formal grievance, depending upon the nature of his complaint. Fla. Admin. Code 33-103.005-.007. If an inmate feels that the grievance has not been satisfactorily resolved, he or she must then submit an appeal to the Secretary of the Florida Department of Corrections. Fla. Admin. Code 33-103.007; *see also Pavao v. Sims*, 679 F. App'x 819, 824 (11th Cir. 2017).

Here, Oliver exhausted his administrative remedies. He filed grievances about his

A defendant violates a prisoner's First Amendment rights to free speech and to petition the government for a redress of grievances when they punish a prisoner for filing a grievance about conditions of imprisonment. *See Boxer X v. Harris*, 437 F.3d 1107, 1112 (11th Cir. 2006). To prevail on a retaliation claim, the inmate must establish that: "(1) his speech was constitutionally protected; (2) the inmate suffered adverse action such that the [official's] allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action [the refusal to provide proper medical care] and the protected speech [the grievance]." *O'Bryant v. Finch*, 637 F.3d 1207, 1212 (11th Cir. 2011) (per curiam) (footnote omitted).

Here, Oliver has not presented any evidence that demonstrates that Calderon or Todd retaliated against him for filing grievances about his medical treatment. Oliver was repeatedly treated for his gastrointestinal issues while incarcerated at Tomoka between 2015 and 2019 and continued to receive medical treatment after he filed his grievances. Thus, Oliver fails to show that he suffered an adverse action or that there is a causal connection between any alleged retaliatory action and his protected speech. Accordingly, Defendants' Motion for

---

medical care and filed at least one grievance appeal to the Secretary of the Department of Corrections. (Doc. Nos. 171 at 71 and 74; 172-2 at 405, 415, 439, 467).

Summary Judgment with regard to this claim is granted.

   *3. Official Capacity Claims*

  To the extent that Oliver has sued the Treating Defendants in their official capacity, these Defendants contend that they are also entitled to summary judgment. (Doc. 138 at 14-16).

  To succeed against the Treating Defendants in their official capacity, Oliver must demonstrate that they followed an official policy of Centurion of Florida, LLC, the medical provider at Tomoka, that caused a violation of his constitutional rights. *Brown v. Neumann*, 188 F.3d 1289, 1290 (11th Cir. 1999). Liability is appropriate only where a supervisor personally participated in the alleged constitutional conduct or adopted a policy or practice that violates a plaintiff's constitutional rights. *Monnell v. Dep't of Social Serv. of the City of New York*, 436 U.S. 658 (1978); *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003). "'A policy is a decision that is officially adopted by the municipality or created by an official of such rank that he or she could be said to be acting on behalf of the municipality.'" *Fields v. Corizon Health, Inc.,* 490 F. App'x 174, 182 (11th Cir. 2012) (quoting *Goebert*, 510 F.3d at 1332); *Connick v. Thompson*, 563 U.S. 51, 60-61 (2011).

  Oliver has not shown that these Defendants followed any *specific* unconstitutional policy or custom instituted by Centurion of Florida, LLC. And as noted above, Oliver has not demonstrated that his constitutional rights were

violated. Consequently, the Treating Defendants' Motion for Summary Judgment is granted with respect to Oliver's official capacity claims.

### B.     The Corrections Officers (S. Johnson, Hartley, and Stroh)

S. Johnson, Hartley, and Stroh (together, the "Corrections Officers") argue that they are entitled to qualified immunity on Oliver's First and Eighth Amendment claims.[4]  (Doc. 139 at 8-9 and 16-17).

Qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)) (quotation omitted). To receive qualified immunity a defendant must first prove he or she was acting within the scope of his or her discretionary authority. *See Vineyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002). Here, the Corrections Officers were acting in their discretionary authority as corrections officers.

The burden therefore shifts to Oliver, who must demonstrate that qualified immunity does not apply. *Lumley v. City of Dade City*, 327 F.3d 1186, 1194 (11th Cir. 2003). He must satisfy a two-part test to overcome a qualified immunity defense.

---

[4] The Corrections Officers' Motion for Summary Judgment also contains arguments related to Oliver's allegations that they harassed him and used abusive language. However, the Court previously found these allegations to be without merit. (Doc. 65 at 7).

First, Oliver must "demonstrate that, when viewed in the light most favorable to him [or her], a material question of fact exists about whether" the Corrections Officers violated his or her constitutional rights. *Patel v. City of Madison*, 959 F.3d 1330, 1338 (11th Cir. 2020). Second, he must show that the right was "clearly established." *Id.* Although it will often be appropriate to consider whether a constitutional violation occurred before assessing whether the right at issue is clearly established, the two questions may be answered in either order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Here, Oliver has not shown that the Corrections Officers had a subjective knowledge of the risk of harm regarding his medical condition or that they ignored that risk by more than gross negligence. *Burnette*, 533 F.3d at 1330. Hartley, a former security corrections officer, attests that he did not interfere with any inmate's medical call-outs or appointments because those were scheduled by medical staff, not corrections staff. (Doc. 140-3 at ¶¶ 2, 5-6). S. Johnson stated that inmates who have medical appointments are already checked in and sitting in the lobby area of the medical wing before she arrives for her shift and that no inmate who is present in the lobby is prevented from attending their medical appointments. (Doc. 140-7 at 1-2). She also notes that medical call-outs or appointments are made by medical staff and that the corrections officers merely are given a list of names of inmates who have appointments for that day. (*Id.* at 2).

13

If an inmate is not on the call-out list, they do not have an appointment for medical treatment. (*Id.*). The Corrections Officers also attach Oliver's medical call-out records and grievances, which show that Oliver was treated by medical staff within 24-48 hours from making a sick call request. (Doc. 171 at 1-31). Oliver only complained once about not receiving a medical appointment after making a sick call request. *Id.* at 71.[5]

Oliver has not shown that the Corrections Officers had a subjective knowledge of the risk of harm regarding his medical condition or that they ignored that risk by more than gross negligence. *Burnette*, 533 F.3d at 1330. Oliver also has not shown "a causal connection between the constitutional violation and his injuries." *See Thomas v. Bryant*, 614 F.3d 1288, 1317 (11th Cir. 2010). There is no evidence that the Corrections Officers were responsible for any Eighth Amendment violations because they did not have authority to place Oliver on the call-out list for medical appointments, nor do the records indicate that they refused to allow him to attend his medical appointments related to his gastrointestinal issues.

But even assuming Oliver was prevented from attending two medical

---

[5] Oliver provides the Court with two affidavits from inmates Esposito and Anthony, who attest that the Corrections Officers refused to allow Oliver or themselves to attend medical appointments on two occasions. (Doc. 163 at 24 and 28).

14

appointments, as attested to by two other inmates, he fails to rebut the record evidence provided by the Corrections Officers. That evidence indicates that Oliver routinely received medical appointments after placing a sick call request. (Doc. 140-7 at 71). Oliver only complained once that he did not receive a medical appointment after making a sick call request. (*Id.* at 71). His medical records demonstrate that he received consistent medical care while at Tomoka from 2015 through 2019. Oliver offers no evidence that the denial of two medical appointments exacerbated his medical condition or otherwise harmed him. Therefore, Oliver has not demonstrated that the Corrections Officers violated his Eighth Amendment rights, and they are entitled to qualified immunity with respect to this claim.

Similarly, Oliver has not shown that a constitutional violation occurred with regard to his First Amendment claim. He has not presented any evidence demonstrating that the Corrections Officers prevented him from attending medical appointments or that he was denied medical treatment because of any grievance. Oliver continued to receive medical treatment from Tomoka's medical staff and filed grievances when he was dissatisfied with his treatment. The Corrections Officers are therefore entitled to qualified immunity.

C.    **The Unserved Defendants (Papp, Taylor, Maier, and Durham)**

15

Oliver also sued Papp, Taylor, Maier, and Durham (together, the "Unserved Defendants") (Doc. 11 at 2-3, and 10-12). The United States Marshal Service ("Marshal") attempted to serve the Unserved Defendants by certified mail but they did not waive service of the summons. (Doc. Nos. 14, 26, 31, 32, and 37). The Marshal then attempted to personally serve them, but the summons were returned unexecuted. (Doc. Nos. 40, 47, 48, 49, and 52) (noting that Taylor, Maier, and Durham no longer worked at Tomoka and that Papp was deceased). The Court gave Oliver an additional opportunity to personally serve these defendants (Doc. 63), but Oliver was not able to serve them.

Rule 4(m) of the Federal Rules of Civil Procedure provides that if "a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time." The Eleventh Circuit has held that in the case of a *pro se* prisoner, a federal court should not dismiss a defendant who no longer works at the prison or jail if a "court-appointed agent" can locate the defendant with "reasonable efforts." *Richardson v. Johnson*, 598 F.3d 734, 740 (11th Cir. 2010).

Here, Oliver had adequate time—three years—and several opportunities to serve the Unserved Defendants. He has not demonstrated that Papp has an estate that can be sued, nor has he provided sufficient addresses for Taylor, Maier, and

16

Durham. *See Jones v. Johnson*, No. 4:18-CV-76-MW-GRJ, 2018 WL 3340597, at *1 (N.D. Fla. June 8, 2018), *report and recommendation adopted*, No. 4:18CV76-MW/GRJ, 2018 WL 3341203 (N.D. Fla. July 6, 2018) (dismissing a deceased defendant from the action because the plaintiff failed to provide the name of a personal representative or demonstrate that the defendant's estate could be sued); *Richardson*, 598 F.3d at 740. Because the Unserved Defendants' addresses are unknown, the Marshal was unable to locate them after using reasonable efforts. Therefore, the action against the Unserved Defendants is dismissed without prejudice.

## IV.   CONCLUSION

It is therefore **ORDERED AND ADJUDGED** that:

1.     The Motion for Summary Judgment (Doc. 138) filed by Defendants Calderon, K. Johnson, and Todd is **GRANTED**.

2.     The Motion for Summary Judgment (Doc. 139) filed by Defendants S. Johnson, Hartley, and Stroh is **GRANTED**.

3.     Defendants Papp, Taylor, Maier, and Durham are **DISMISSED** from this action without prejudice pursuant to Rule 4(m) of the Federal Rules of Civil Procedure.

4.     The Clerk of Court shall enter judgment accordingly and close the

case.

**DONE AND ORDERED** in Orlando, Florida, on February 24, 2021.



GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies to:
OrlP-3 2/24
Counsel of Record
Warren L. Oliver

18